IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DANIELLE MARIE BRADLEY,

          Plaintiff,

v.                             CIVIL ACTION NO.  2:14-cv-23774

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Danielle Marie Bradley's Complaint[1] seeking review of the final decision of the Commissioner of Social Security (the "Commissioner").  (ECF 2.)  By standing order entered on May 7, 2014 and filed in this case on July 31, 2014, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and recommendations for disposition (the "PF&R").  (ECF 4.)  On August 31, 2015, Magistrate Judge VanDervort entered his PF&R, in which he recommends that this Court deny Plaintiff's Motion for Judgment on the Pleadings ("Plaintiff's Motion"), (ECF 11), grant the Defendant's Motion for Judgment on the Pleadings ("Defendant's Brief"), (ECF 14), affirm the final decision of the Commissioner, and dismiss this matter from the Court's docket.  (ECF 16.)

---

[1] The PF&R erroneously refers to Plaintiff as "Diana L. Wolfe" on the opening page.  This appears to be a clerical error, and the Court adopts Plaintiff's proper name, Danielle Marie Bradley, for the record.

1

Plaintiff filed timely objections to the PF&R on September 14, 2015 (the "Objections"). (ECF 17.)

For the reasons that follow, the Court **SUSTAINS in part** the Objections, (ECF 17), **DECLINES TO ADOPT** the PF&R, (ECF 16), **GRANTS** Plaintiff's Motion, (ECF 11), insofar as it requests remand of this case, **DENIES** Defendant's Brief, (ECF 14), **REVERSES** the final decision of the Commissioner, and **REMANDS** this case pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order, and **DISMISSES** the action.

## I.   *Procedural Background*

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed applications for disability insurance benefits and supplemental security income on May 17, 2011, alleging disability as of April 15, 2010. (ECF 9-6 at 9–11, 12–17.) The applications were initially denied on August 23, 2011, (ECF 9-4 at 9–11, 15–17, 20–22, 26–28), and upon reconsideration on September 9, 2011, (*id*. at 32-37).

A hearing was held before Administrative Law Judge Sabrina M. Tilley (the "ALJ") on November 14, 2012. (ECF 9-2 at 26–57.) On January 7, 2013, the ALJ issued an unfavorable decision.[2] (*Id*. 12–25.) The Appeals Council denied review of the ALJ's decision on May 20,

---

[2] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since April 15, 2010, the alleged onset date." (ECF 9-2 at 17.) At step two, the ALJ found that Plaintiff has the following severe impairments: "multiple sclerosis; transverse myelitis; asthma; bone window in spine, HNP thoracic spine on MRI; posttraumatic stress disorder (PTSD); panic attacks; anxiety; polysubstance abuse; personality disorder cognitive problems associated with multiple sclerosis; and memory loss." (*Id*. at 17–18.) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id*. at 18–19.) The ALJ next found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with certain listed limitations. (*Id*. at 19–24.) The ALJ further found that Plaintiff "is unable to perform any past relevant work." (*Id*. at 24.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id*. at 24–25.) The ALJ relied on the testimony of a vocational expert in making this step-five determination. (*See id*. at 25.)

2014. (*Id*. at 2–6.) Thereafter, on July 16, 2014, Plaintiff filed the Complaint in this Court. (ECF 2.)

## II. Standard of Review

### A. Review of the PF&R

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B. Review of the ALJ's Findings and Decision

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see, e.g.*, 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v. Celebrezze*,

368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) and *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[3] *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v.*

---

[3] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65; *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

### III.  Discussion

Plaintiff raises two objections to the Magistrate Judge's findings and recommendations in the PF&R. First, Plaintiff asserts that the Magistrate Judge erred in finding that the ALJ committed harmless error in omitting restrictions to account for Plaintiff's moderate social functioning difficulties from her hypothetical question to the vocational expert. (ECF 17 at 2.) Second, Plaintiff contends that Magistrate Judge VanDervort erred in finding that the ALJ properly determined Plaintiff's credibility. (*Id*.) The overrules the first objection, but sustains the second.

### A.  ALJ Error Presenting Hypothetical to Vocational Expert

At step five of the "sequential evaluation" process, the burden shifts to the Social Security Administration to establish that a claimant is able to perform work other than any past relevant work "considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see* 20 C.F.R. §§ 404.1520(f) & 416.920(f). In order to satisfy this burden, an ALJ may consider the testimony of a vocational expert. *See Morgan v. Barnhart*, 142 F. App'x 716, 720 (4th Cir. 2005) ("In deciding whether the Commissioner has met her burden, the ALJ generally must accept evidence from a vocational expert . . . ."). Vocational experts are "employment experts who know the mental and physical demands of different types of work . . . ." *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (citations omitted). "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which [the] particular

claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). "[R]equiring the testimony of a vocational expert is discretionary." *Hall*, 658 F.2d at 267 (citation omitted).

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker*, 889 F.2d at 50–51. To frame a hypothetical question, the ALJ translates the claimant's impairments into a residual functional capacity ("RFC") from which the vocational expert can determine whether work is available in the national economy. *See Fisher*, 181 F. App'x at 364 ("[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert."). "While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record." *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)); *see also id*. ("[T]he hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe." (citing *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983)). The Commissioner may not rely upon the answer to a hypothetical question if the hypothesis fails to fit the facts. *See Swaim v. Califano*, 599 F.2d 1309 (4th Cir. 1979).

In this case, the parties agree that the ALJ erred by asking a hypothetical that did not set forth all of the restrictions found by the ALJ for Plaintiff's RFC. In her RFC finding, the ALJ determined that Plaintiff could perform light work, subject to a number of explicit limitations. (ECF 9-2 at 19.) As pertinent here, the ALJ determined that Plaintiff's work environment "must require only occasional interaction with supervisors and coworkers, and no interaction with the general public." (*Id*. at 19–20.) It is undisputed that the ALJ failed to include this restriction

when questioning the vocational expert. (*See id*. at 49–56.) The ALJ then used the vocational expert's answers to determine the extent to which Plaintiff's specific limitations restricted her ability to perform the full range of light work. (*Id*. at 25 ("To determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.").)

The vocational expert testified, based on the factors propounded to her, that the Plaintiff would be able to perform several jobs for which availability existed in the West Virginia, Ohio, and Kentucky job region, including in customer service, as an office helper, and as a cashier. (*Id*. at 52–56.) Based on the vocational expert's testimony, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at 25.)

The Magistrate Judge concluded that the ALJ's error was harmless because, although Plaintiff's social limitation was not included in the hypothetical, the vocational expert nonetheless provided an available job that accounted for that limitation. (ECF 16 at 16.) Specifically, with reference to the Dictionary of Occupational Titles ("DOT"), the Magistrate Judge determined that the job of office helper "accommodates the social limitations eliminated from the [vocational expert] hypothetical question." (*Id*.) As such, even if the hypothetical had included the social limitation at issue, the vocational expert would have still identified the office helper job as available in significant numbers for Plaintiff, and thus that she was not disabled. Plaintiff objects to this determination of harmless error, arguing that the Magistrate Judge's reference to the DOT job description was beyond the scope of both his review and the ALJ's expertise. (ECF 17 at 3.)

Plaintiff contends that vocational testimony was required to support the ALJ's conclusion that Plaintiff could perform the job of office helper with all of the restrictions included in the RFC, and that the Magistrate erred in upholding the ALJ based on harmless error. (*Id.*)

Plaintiff's objections fail to appreciate the nature of harmless error review. In administrative law cases, as elsewhere, a reviewing court need not remand a case for correction of errors that do not affect the outcome of the case. *See, e.g.*, *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."). If an administrative law judge errs in a part of her decision, the court "should nonetheless affirm the ALJ's decision," so long as "the court finds the error 'harmless.'" *Held v. Colvin*, Civil Action No. 7:12-CV-00457, 2014 WL 556266, at *8 (W.D. Va. Feb. 12, 2014) (citation omitted). An error is harmless if it "clearly had no bearing on the procedure used or the substance of the decision reached." *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964)). Stated another way, "[r]emand is not required where despite [the] ALJ's error, [the] ALJ would have reached the same result notwithstanding his error." *Farnsworth v. Astrue*, 604 F.Supp.2d 828, 837 (N.D. W. Va. 2009) (Stamp, J.) (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted); *see also Camp v. Massanari*, 22 F. App'x 311, at *1 (4th Cir. 2001) (finding that an error by the

8

administrative law judge was harmless where the plaintiff "made no showing of prejudice"). In *Shinseki*, the Supreme Court analogized "review of ordinary administrative proceedings to appellate review of civil cases" in the context of a harmless error determination and provided the following useful discussion:

> To say that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement. In ordinary civil appeals, for example, the appellant will point to rulings by the trial judge that the appellant claims are erroneous, say, a ruling excluding favorable evidence. Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm. If, for example, the party seeking an affirmance makes a strong argument that the evidence on the point was overwhelming regardless, it normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary. The party seeking to reverse the result of a civil proceeding will likely be in a position at least as good as, and often better than, the opposing party to explain how he has been hurt by an error.

556 U.S. at 409. *See, e.g.*, *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (citing *Shinseki* in a harmless error discussion in a social security disability case).

In the instant case, the Court finds that the ALJ's error was harmless. As noted in the PF&R, the job description of office helper, as defined in the DOT, does not make any reference to interaction with the general public and requires no more than occasional speaking. *See* Dep't. of Labor, *Dictionary of Occupational Titles*, Occ. Code 239.567-010 (4th ed. 1991). Thus, it appears from the record that the ALJ's ultimate determination as to disability would have been the same, even if she had included the omitted social restriction, because the office helper recommendation nonetheless accounts for that limitation. And, as the vocational expert's testimony makes clear, there exist "significant numbers" of office helper positions in Plaintiff's regional job market to allow their availability to Plaintiff to preclude a finding of disability. (*See*

ECF 9-2 at 52 (vocational expert testifying that over 2,400 office helper positions exist in the West Virginia, Ohio, Kentucky region and over 360,000 such positions exist nationally).); *see also Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (finding that 110 available regional jobs was not an insignificant number for purposes of determining disability).

Plaintiff does not point to any specific evidence that the inclusion of the social functioning limitation in the hypothetical to the vocational expert would have resulted in a different determination as to job availability by the ALJ. Instead, Plaintiff only notes that vocational testimony is required to determine that Plaintiff could perform the job of office helper, even with reference to her social limitations. (ECF 17 at 4.) However, while vocational expert testimony is useful and often the preferred method for determining job availability, reference to such testimony is not required. *See Hall*, 658 F.2d at 267 (recognizing the "discretion of the ALJ in requiring vocational expert testimony"). Further, contrary to Plaintiff's contention that consideration of the DOT is "outside the scope of the ALJ's expertise," (ECF 17 at 3), an ALJ is expressly authorized to "consider both the Dictionary of Occupational Titles and vocational expert testimony to determine whether a Social Security claimant can find work suited to his residual functional capacity." *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (citing SSR 00-4p).

Thus, on the record before this Court, it appears that the vocational expert ultimately identified a job title that both accounts for the omitted social functioning restriction and exists in significant numbers for Plaintiff to perform. As such, Plaintiff fails to meet her burden to establish that the ALJ's erroneous hypothetical constituted harmless error. *See Ward v. Astrue*, Civil Action No. 2:09-CV-00053, 2010 WL 1752554, at *4 (W.D. Va. May 3, 2010) (finding that

10

ALJ's hypothetical, though not setting forth the exact residual functional capacity found by the ALJ, was harmless error where the vocational expert nonetheless "identified two occupations that fit within the parameters of the limitation that was omitted"); *Farnsworth*, 604 F. Supp. 2d at 837 (finding harmless error where ALJ erroneously omitted a limitation found in the RFC from the hypothetical, but the vocational expert nonetheless identified jobs accounting for the limitation and there was "no indication that inclusion of the machinery exposure limitation would have resulted in a different finding by the ALJ regarding the availability of suitable jobs in the economy"); *cf. Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (finding that ALJ's erroneous instruction to a vocational expert, failing to account for one of the claimant's limitations, was not harmless because there was "insufficient evidence in the record to conclude that the remaining jobs identified by the [vocational expert] exist in significant numbers in the national economy . . .").

Accordingly, the Court **OVERRULES** Plaintiff's objection to the PF&R finding that the ALJ's erroneous hypothetical omission was harmless error.

**B.     ALJ Credibility Evaluation**

Next, Plaintiff argues that the Magistrate Judge erred in finding that the ALJ properly evaluated Plaintiff's credibility.  (ECF 17 at 4.)   Specifically, Plaintiff contends that the ALJ "did not properly weigh the factors she was required to consider in determining Bradley's credibility, relied on treatment records dated prior to the alleged onset date of April 15, 2010, and erroneously focused on Bradley's past occupation as an exotic dancer after her alleged onset date."  (*Id*. at 4–5.)  The Court finds that the ALJ's credibility determination was impermissibly tainted by an erroneous understanding of Plaintiff's career as an exotic dancer.   Based on the reasons articulated

11

in the ALJ decision, the Court cannot determine whether the ALJ's credibility determination was supported by substantial evidence.

Pursuant to the relevant regulations, the ALJ must employ a two-step process to evaluate a claimant's report of pain or other symptoms. *See* 20 C.F.R. §§ 404.1529 & 416.929; Soc. Sec. Admin., SSR 96-7P, *Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* (July 2, 1996). The first step assesses whether objective medical evidence in the record demonstrates "the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b) & 416.929(b). This first step requires a "threshold" showing that a claimant has a medical condition that could produce "the pain the claimant alleges she suffers." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). At this stage, "the pain claimed is not directly at issue," *id*., and a claimant need only show objective medical evidence of "some condition that could reasonably be expected to produce the pain alleged, not objective evidence of the pain itself." *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990). By the same token, the claimant's own statements "about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled." SSR 96-7p.

If this showing is made, the next step requires the ALJ to evaluate the intensity and persistence of the symptoms, as alleged by the claimant, to determine the extent to which those symptoms "limit [the claimant's] capacity to work." 20 C.F.R. § 404.1529(c)(1). It is not necessary that the claimed severity be proved by objective medical evidence. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Once the first level showing is established, "the claimant's allegations as to the severity and persistence of her pain may not be dismissed merely

12

because objective evidence of the pain itself . . . are not present to corroborate the existence of pain." *Craig*, 76 F.3d at 595. However, where a plaintiff's claims as to the severity of symptoms are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p; *see also Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990) (stating that where the first step of the two-step analysis is shown, "the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence").

In making this credibility evaluation, the ALJ is to consider all relevant evidence, including medical signs and laboratory findings and the individual's own statements about the symptoms, 20 C.F.R. § 404.1529(a), as well as the opinions of treating and non-treating medical sources, *id*. § 404.1529(c)(2), and other factors "relevant to [a claimant's] symptoms" such as daily activities, location, duration, frequency, and intensity of pain and other symptoms, and measures taken (such as medication, treatment, or home remedies) to alleviate those symptoms. *Id*. § 404.1529(c)(3).

Ultimately, although a plaintiff's allegations of pain cannot be discredited solely because not substantiated by objective evidence, "they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (quoting *Craig*, 76 F.3d at 595). Because an ALJ has the opportunity to observe the demeanor of the claimant, her determinations as to credibility are "to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). A reviewing court is not entitled to make credibility

13

determinations, and is limited to reviewing whether the ALJ determination was based on substantial evidence. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). That review, however, must be confined to the reasons actually articulated by the ALJ. *See SEC v. Chenery*, 318 U.S. 80, 93–94 (1943); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

When making a credibility determination, an ALJ's decision "should refer specifically to the evidence informing the ALJ's conclusion." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *see also* SSR 96-7P (providing that the reasons underlying an ALJ's credibility assessment "must be grounded in the evidence and articulated in the determination or decision"). Where the ALJ "points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 n.2 (D.S.C. 2007) (citing *Mastro*, 270 F.3d at 176). It follows, however, that an ALJ commits error when her decision does not indicate a proper basis for the credibility determination made. In the present case, the ALJ's credibility determination is improper because it relies on a clearly erroneous factual determination in discrediting the Plaintiff's credibility.[4] In light of the considerable weight given by the ALJ to Plaintiff's

---

[4] Plaintiff contends that the ALJ's credibility determination was improper because in making that determination, the ALJ used boilerplate language condemned by the Fourth Circuit in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Specifically, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

(ECF 9-2 at 20.) In *Mascio*, the Fourth Circuit noted that "this boilerplate 'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Id.* at 639 (citing *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). The *Mascio* Court noted that the regulations discussed above require the ALJ to consider a claimant's subjective pain and symptoms, and make credibility determinations based on those claimed symptoms, as part of the ALJ's RFC determination. *Id.* ("[A] claimant's pain and residual functional capacity are not separate assessments to be compared with each other. Rather, an ALJ is required to consider a

14

"continued" work as an exotic dancer, the Court cannot find that the ALJ's stated reasons for discrediting Plaintiff's credibility is supported by substantial evidence.

It is undisputed that Plaintiff's work as an exotic dancer had ceased before the alleged onset date and that the ALJ's references to the contrary were clearly erroneous. (*See* ECF 9-7 at 43 (Plaintiff's work history report showing work as a dancer from 2008 through 2010); ECF 9-2 at 31–32 (Plaintiff testifying that the only place she has worked since the onset date in 2010 was at a restaurant, George's Place, as a cashier); ECF 14 (Defendant's Brief in Support of Defendant's Decision) at 15 (acknowledging the ALJ's references to be "factually incorrect").) The issue for the Court is whether, taking away the conclusions as to credibility that were based on Plaintiff's work as an exotic dancer, the ALJ's decision not to find Plaintiff credible was nonetheless supported by substantial evidence.

The Commissioner argues that the ALJ's erroneous reference to Plaintiff's dancing work is "persuasive," notwithstanding is factual inaccuracy. (ECF 14 at 15.) The Commissioner contends that while Plaintiff might not have been performing work as a dancer during the period between the alleged onset date and the hearing before the ALJ, she was working 30 hours per week as a hostess at a restaurant. (*Id*.) Thus, the Commissioner argues, Plaintiff was working during the relevant time period, and reference to work activity is an appropriate consideration to a credibility determination under the regulations. Be that as it may, the Commissioner's argument ignores the notion, fundamental to review of agency action that agency decisions may be upheld,

---

claimant's pain as part of his analysis of residual functional capacity."). That Court also noted, however, that the ALJ's use of boilerplate language "would be harmless if he properly analyzed credibility elsewhere." *Id*. Ultimately, then, the inquiry comes down to whether the ALJ conducted a proper credibility analysis, regardless of the language chosen to do so. In this case, the Court concludes that the ALJ's credibility analysis was not proper because that analysis relied on erroneous facts to make that determination.

15

"if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962). A court is not entitled to "supply a reasoned basis for the agency's action that the agency itself has not given," *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974), and in this case the ALJ decision provides absolutely no indication that it considered Plaintiff's work as a cashier when making the credibility determination. Thus, the existence of other work, unconsidered by the ALJ, cannot provide substantial evidence for the decision ultimately made.

The Magistrate Judge, on the other hand, based his decision to uphold the ALJ's credibility determination on the finding that any misstatement of Plaintiff's work history was harmless, as Plaintiff's "work history was but one factor considered in assessing [Plaintiff's] credibility." (ECF 16 at 21.) This determination, however, is belied by a record which indicates that the ALJ gave substantial weight to Plaintiff's "continued" work as an exotic dancer when determining how to weigh Plaintiff's credibility.

In determining the plaintiff's credibility, the ALJ focused on three types of evidence in the record: (1) objective medical evidence, (2) Plaintiff's self-reports of day-to-day activities, and (3) Plaintiff's work history. (*See* ECF 9-2 at 20–24.) The ALJ determined that inconsistencies between this objective evidence and Plaintiff's reported "extreme level of symptoms and limitations" diminished Plaintiff's credibility and implied an attempt on Plaintiff's part to "present herself as more limited than she is in order to secure benefits." (*Id*. at 20.) The ALJ's consideration of the objective medical evidence was appropriate, and there was substantial evidence to support her conclusion that Plaintiff "has not had the type of treatment one would expect of a totally disabled individual." (*Id*.) However, the ALJ's other conclusions as to

16

Plaintiff's credibility, upon consideration of Plaintiff's day-to-day activities and work history, are not similarly supported because the ALJ heavily relied on Plaintiff's work as an exotic dancer, work that the ALJ incorrectly believed to have occurred after the alleged onset date, to discredit Plaintiff's credibility. (*Id*. at 22.)

The ALJ's consideration of the objective medical evidence led her to draw the conclusion that Plaintiff's medical conditions "are not documented to have caused they [sic] type of severe symptoms and limitations [Plaintiff] has alleged." (*Id*.) However, the ALJ's strongest findings with respect to credibility came when discussing Plaintiff's work as an exotic dancer. On two separate occasions, the ALJ drew a direct connection between Plaintiff's dancing work and a lack of credibility. First, when assessing Plaintiff's day-to-day activities, the ALJ noted that Plaintiff was able to care for her young children and perform simple tasks like shopping in stores, paying bills, counting change, and having bank accounts. (*Id*.) However, it was Plaintiff's "continued" work as a dancer, "well after her alleged date of onset," that suggested to the ALJ that "the claimant's activities, at least at times, has [sic] been greater than generally reported." (*Id*.) When addressing Plaintiff's work history, the only employment the ALJ mentioned was Plaintiff's work as a dancer. Again, the ALJ determined that this work, "years after [Plaintiff's] alleged on set [sic] date," at a "somewhat physically demanding" job "fails to bolster [Plaintiff's] credibility." *(Id*.) Both of these credibility conclusions are unsupported by any valid evidence in the record.

On this record, the Court cannot conclude that the ALJ's credibility determination was based on substantial evidence. Although the ALJ considered objective medical evidence, including expert medical opinion, the ALJ gave significant attention to Plaintiff's work history as a dancer, a history that the ALJ erroneously believed to be inconsistent with Plaintiff's claimed

17

disability. The ALJ gave enough consideration to this improper factor to lead this Court to question the basis for the ALJ's ultimate credibility determination. Remand is appropriate to allow the ALJ to consider Plaintiff's credibility without erroneous consideration of the nature of Plaintiff's employment after the alleged onset date.

## IV.  Conclusion

For the reasons discussed herein, the Court **SUSTAINS IN PART** the Objections, (ECF 17), **DECLINES TO ADOPT** the PF&R, (ECF 16), **GRANTS** Plaintiff's Motion, (ECF 11), insofar as it requests remand of this case, **DENIES** Defendant's Brief, (ECF 14), **REVERSES** the final decision of the Commissioner, **REMANDS** this case pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order, **DISMISSES** this case, and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:   September 30, 2015

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE